UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 04-451-DLB

WORLDWIDE EQUIPMENT                                                              PLAINTIFF

vs.                         <u>MEMORANDUM OPINION AND ORDER</u>

UNITED STATES OF AMERICA                                                         DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the court on the parties' cross motions for summary judgment. (Doc. #47, 48). Both parties have filed responses and replies. (Doc. #49, 50, 51, 53). For the reasons that follow, Plaintiff's motion for summary judgment (Doc. #47) is hereby **denied**. Defendant's motion for summary judgment (Doc. #48) is hereby **granted** as to both the original complaint and the issue of liability on the counterclaim. However, the matter will be referred to Magistrate Judge Edward B. Atkins to determine damages on the counterclaim.

**I.     Introduction**

This is a tax refund action brought by Plaintiff Worldwide Equipment against Defendant United States of America, to which Defendant has filed a counterclaim, seeking further tax payments from Plaintiff. This Court has jurisdiction based on 28 U.S.C. § 1346(a)(1) & (c).

**II.    Background**

Plaintiff Worldwide Equipment is a heavy truck dealer with headquarters in

1

Prestonburg, Kentucky. (Doc. #47-1 at 2). It has facilities and conducts business in Kentucky, West Virginia, Virginia, Tennessee, and Ohio. (*Id.*) The vehicle at issue in this case is a Mack Trucks, Inc. ("Mack") RD888SX. By way of explaining why Worldwide is responsible for the federal excise tax imposed by the Internal Revenue Service ("IRS"), Worldwide provides:

> Worldwide is a heavy truck dealer and as such, a "Form 637 filer." This means that Worldwide purchases complete or incomplete new truck chassis from an original manufacturer, such as Mack, without paying federal excise tax. When Worldwide sells a completed new truck or an incomplete chassis to a retail customer, it has the responsibility for determining whether the 12% excise tax is due, and if it is, charging, collecting and remitting the tax to the IRS along with a Form 720 (Federal Excise Tax Return). While Worldwide, like most dealers, passes the excise tax on to its customers, Worldwide is the party required by law to collect the excise tax.

(Doc. #47-1 at 5 (footnotes omitted)). With respect to the RD888SX, Plaintiff states:

> Worldwide adopted a practice of requiring its customers to sign a written statement attesting that the RD888SX Coal Hauler they were purchasing from Worldwide would be operated as an off-highway vehicle. If the customer refused to sign this statement, or Worldwide believed that the customer intended to operate the vehicle on public highways, it collected, reported and remitted excise tax – even though the vehicle was still illegal to operate on public highways.

(Doc. #47-1 at 13 (footnote and internal citation omitted)).

The RD888SX first came to the attention of the IRS during a 1999 investigation into whether a particular Bridgestone/Firestone tire should be subject to excise tax. (Doc. #48-2 at 14). The IRS ultimately determined that the RD888SX was subject to excise tax. On or before July 24, 2001, the IRS notified Plaintiff that it was opening an investigation into Plaintiff's 1999 excise tax returns because Plaintiff had not paid federal retail excise taxes

2

(FRET) for certain RD888SX sales. (Doc. #48-2 at 22).[1]  Plaintiff argued that the IRS assessment was erroneous.  This argument was "initially rejected in 2003, and again in 2004 after plaintiff had availed itself of internal Service administrative appeal procedures." (*Id.*)  Plaintiff paid the excise tax on eight vehicles sold to a single customer, James C. Justice Cos.  Plaintiff then filed a complaint for the refund of the FRET paid ($119,302). Defendant filed a counterclaim for $1,149,140 for taxes assessed upon at-issue vehicles sold since 1999 for which no FRET had been paid.[2]

### III.   Standard of Review

#### A.   Tax Refund Suits

In tax refund suits, IRS assessments enjoy a "presumption of correctness."  *Liquid Asphalt Systems, Inc. v. United States*, 555 F. Supp. 1100, 1102 (W.D. Mo. 1982) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933)).  Thus, "[t]he taxpayer must prove by a preponderance of the evidence both that it has overpaid tax and the amount of the overpayment."  *Id* (citing *Helvering v. Taylor*, 293 U.S. 507, 514 (1935); *United States v. Janis*, 428 U.S. 433, 440 (1976)).  The burden is on the taxpayer even in cases, such as the one now before the Court, where the United States has filed a counterclaim for the unpaid balance of the tax assessments.  *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir. 1981).  "[T]he burden on the taxpayer is not merely a burden of producing evidence;

---

[1] During the relevant period (from 1999 to 2004), Plaintiff sold approximately 200 RD888SXs total. (48-2 at 16).

[2] The amount of excise tax already paid by Plaintiff reflects taxes assessed on 8 trucks sold by Worldwide during the tax quarter ending March, 31, 2004.  The IRS counterclaim seeks to impose liability on Worldwide for about 90 vehicles sold by Worldwide from the second quarter of 1999 through the first quarter of 2003. (Doc. #47-1 at 3).

3

it is a burden of persuasion by the preponderance of the evidence that the assessment is not correct. Only if that is shown must the government show, on its counterclaim, what the correct assessment is." *Id.* Furthermore, "[e]xemptions from taxation are to be strictly construed and not easily expanded." *Liquid Asphalt*, 555 F. Supp at 1102 (citing *Heiner v. Colonial Trust Co.*, 275 U.S. 232, 235 (1927); *Bingler v. Johnson*, 394 U.S. 741, 752 (1969); *Comm'r v. Jacobson*, 336 U.S. 28, 49 (1949)).

### B. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

Once the movant has met its initial burden of establishing that summary judgment may be appropriate as a matter of law, the non-movant cannot rest on its pleadings but must instead demonstrate that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 341 (6th Cir. 2006). If a reasonable jury could not

4

return a verdict for the nonmoving party based on the evidence construed in its favor, summary judgment should be granted to movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**IV.     Analysis**

The applicable provision of the Internal Revenue Code imposes a 12% excise tax on the first retail sale of heavy truck chassis and bodies. 26 U.S.C. § 4051(a). Pursuant to the applicable federal regulation at 26 C.F.R. § 48.4061(a)-1(a)(2), such truck chassis and bodies are subject to excise tax "only if...sold for use as a component part of a highway vehicle." "[T]he term 'highway vehicle' means any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways, whether or not also designed to perform other functions." 26 C.F.R. § 48.4061(a)-1(d)(1).[3] However, the regulation goes on to say that the concept of a "highway vehicle" does not include vehicles described in paragraph (d)(2) of the section. *Id*. Paragraph (d)(2) lists three exceptions to the definition of "highway vehicles." 26 C.F.R. § 48.4061(a)-1(d)(2)(i), (ii), & (iii). Relevant to this matter, 26 C.F.R. § 48.4061(a)-1(d)(2)(ii) provides for an off-highway vehicle exception to the 12% FRET. It provides in pertinent part:

> A self-propelled vehicle, or a trailer or semitrailer, is not a highway vehicle if it is
>
> (A)     specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling,

---

[3] "[T]he term 'public highway' includes any road (whether a Federal highway, State highway, city street, or otherwise) in the United States which is not a private roadway." 26 C.F.R. § 48.4061(a)-1(d)(1).

>    timbering, or operation similar to any one of the foregoing enumerated options, *and*
>
> (B)   if by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired.
>
> For purposes of applying the rule of (B) of this subdivision, account may be taken of whether the vehicle may travel at regular highway speeds, requires a special permit for highway use, is overweight, overheight or overwidth for regular use, and any other relevant considerations.

*Id.* (emphasis added)   Thus, resolution of this matter turns on a determination of whether the RD888SX satisfies the "special design" *and* "substantial impairment" tests, thereby qualifying as an off-highway vehicle exempt from the 12% excise tax.

Taxability is to be determined *ex ante* in an objective manner taking into consideration a particular vehicle model.  *See Dillon Ranch Supply v. United States*, 652 F.2d 873, 881 (9th Cir. 1981) (holding that the "test for taxability...is primary design, not primary use").  Taxability does not turn on a purchaser's *ex post* actual use of the vehicle. *See Freightliner of Grand Rapids v. United States*, 351 F. Supp. 2d 718, 727-28 (W.D. Mich. 2004) (concluding that an actual use standard would be "unworkable").  Actual highway use is not required for a vehicle to be subject to excise tax.  Thus, a vehicle that is used by subsequent purchasers exclusively off-highway is still subject to excise tax if its design does not objectively meet the requirements of an off-highway vehicle.

    **A.    Special Design**

Whether the RD888SX satisfies the off-highway vehicle exception's "special design" test is a close call.  It would seem that the vehicle's primary purpose is, indeed, the hauling of coal.  However, this hauling entails transport of the coal from the mine site to tipple,

6

which often entails travel over the public highways.  Thus, while specific components of the RD888SX may have been modified to improve its ability to operate in the Appalachian coal region, it does not satisfy the requirement that it be "specially designed for the primary function of transporting a particular type of load *other than over the public highway*." 26 C.F.R. § 48.4061(a)-1(d)(2)(ii)(A) (emphasis added).  Rather, the RD888SX's ability to transport coal over public roadways is as important to its role in the coal industry as its sturdier design features which make it better suited for work in the Appalachian coal fields.  Use of the RD888SX on the public highways can hardly be considered "merely incidental," since, in most cases, one must travel over the public roads to transport coal from mine face to tipple.[4]

Bruce Hollenbeck, the program manager who oversaw and was responsible for the design and development of the RD800 in the late 1970s and early 1980s,[5] testified that the RD800 series, the base platform of the RD888SX model, was designed to haul coal from an offroad mining site over the public highways to an off-highway tipple site. (Hollenbeck Dep. 97:3-99:4).  In fact, Plaintiff's own sales literature describes the RD888SX as an on/off-highway mining vehicle. (Doc. #1-10 at 1).  However, as Plaintiff points out and as Bruce Hollenbeck stated in his affidavit, Mack's internal classifications of its vehicles had

---

[4] While some mines have on-site tipples, most do not. (Pigman Decl. ¶¶ 6-7).

[5] According to Defendant, the RD888SX represents one RD800SX engine option package or a variant of the RD800 series of Mack trucks.  Defendant states that there was no separate design process for the RD888SX.  Much is made by both parties about the lineage of the RD888SX.  Obviously, Plaintiff would have the Court believe that the RD888SX's developmental history compels a decision that the RD888SX is an off-highway vehicle.  For its part, Defendant argues that the RD888SX is only marginally different from other 800-series vehicles and is best characterized as a dual use vehicle (on- and off-highway) subject to excise tax.

nothing to do with whether these vehicles could be licensed or whether they were subject to excise tax. (Hollenbeck Aff. ¶ 4).  Similarly, the Court does not find the fact that Mack warranted the RD888SX only under its more restrictive "Class D Off-Road Use" classification dispositive of the issue.  The same holds true for statements by Mack representatives that the RD888SX is an off-highway vehicle.  Despite the characterizations by Mack officials, the real issue for the court to decide is whether, from an objective standpoint, the RD888SX satisfies the "special design" test.

### 1. "Special Design" Features

Plaintiff identifies a number of supposed "special design" features, including, but not limited to, heavy duty triple channel frame construction, Mack SW652 65,000 lb. capacity bogie (rear axle assembly), larger capacity (heavier) air compressor, and a larger engine. (Doc. #47-1 at 10-11).  Defendant points out that many of these features are found on a number of on-highway vehicles and do not compel a finding that the RD888SX is an off-highway vehicle for excise tax purposes. (Doc. #50-1 at 18-19).  Basically, Defendant argues that, while the RD888SX may have been specially designed in a general sense and customized per the requests of Plaintiff's customers, it is not specially designed for off-highway use.

Defendant further posits that the RD888SX is visually and functionally indistinguishable from other dump trucks used to haul coal on the public highways.  The RD888SX complies with Federal Motor Vehicle Safety Standards (FMVSS).  Additionally, the dump body affixed to the RD888SX is capable of hauling a variety of materials.  Plaintiff acknowledges as much but argues that it would be economically unfeasible to do so, noting

8

that the higher purchase price of the RD888SX could not be justified by hauling anything other than coal.

### 2. When a Design Becomes "Special"

Plaintiff cites *Gateway Equip. Corp. v. United States*, 247 F. Supp. 2d 299 (W.D.N.Y. 2003), for the proposition that a "design becomes 'special' ... when a unit that has general hauling capabilities is modified for a particular payload." *Id.* at 307. However, as Defendant notes, the sentence immediately preceding the one cited by Plaintiff provides that "[i]mplicit in the term 'special design' ... is a comparison with a vehicle that is *not* specially designed that could haul all kinds of loads over the highway year-round, such as a dump truck or an end-dump trailer." *Id* (emphasis in original). This Court finds that the RD888SX is just the type of vehicle that the *Gateway* court identified as being "*not* specially designed," as it can haul all kinds of loads over the highway year-round and is similar to a dump truck.[6]

Plaintiff also argues that the RD888SX satisfies the "special design" test, since it was "customized per the customer's preference and according to the chosen application of the vehicle." (Doc. #47-1 at 18 (citing *Bridgestone/Firestone Americas Holding, Inc. v. United States*, No. 3:02-0994, 2006 WL 724561, at *8 (M.D. Tenn Mar. 22, 2006))). However, as will be discussed later, the precise issue before the *Bridgestone* court was different from

---

[6] *Gateway* is distinguished from this case, however, due to the fact that the vehicle at issue in that case was built with a "'horizontal materials discharge system' which maintains a uniform flow of asphalt into the paver." *Gateway*, 247 F. Supp. 2d at 307. The *Gateway* court actually noted that the vehicle's design was more sophisticated than that of a standard dump truck. *Id*. The RD888SX can be characterized as a dump truck with "larger, stronger, and more durable options". (Doc. #48-2 at 6).

9

the one before this Court, and the evidence of customization provided by Plaintiff does not compel a finding that the "special design" test has been satisfied.

### 3. Plaintiff's Misunderstanding of the Law

In its motion, Plaintiff emphasizes the fact that every RD888SX order submitted to Mack contained a statement, written by Worldwide on behalf of the customer, that the customer intended to use the vehicle for a primarily off-highway purpose. However, this argument evidences a misunderstanding of the law. The applicability of excise tax is determined *ex ante* based on the objective design of the vehicle in question. Whether a prospective purchaser signs a statement or not is irrelevant to this determination. If the mere signing of a statement indicating that usage of a vehicle was to be primarily off-highway was dispositive, excise taxes could always be avoided by all retailers, regardless of the vehicle's design.

While Plaintiff argues that the RD888SX was "custom configured" for off-highway use, Plaintiff sold substantially the same truck to customers who planned to use the vehicle exclusively for off-highway use and to customers who acknowledged that they would be using the vehicle to haul coal over the public highways. The fact that Plaintiff collected taxes on certain RD888SXs sold to customers who planned to use the vehicle on public highways evidences Plaintiff's misunderstanding of the law's *ex ante* application and the vehicle's objective dual use design.

### 4. Relevant Case Law

Plaintiff's reliance on *Bridgestone* for the proposition that the RD888SX is an off-highway vehicle not subject to excise tax is misplaced. Specifically, Plaintiff cites a portion

of the *Bridgestone* opinion stating that "the trucks in all of the surveys fit within the [off-highway vehicle] exception." *Bridgestone*, 2006 WL 724561, at *8.[7] It should be noted, however, that the issue in *Bridgestone* was whether the predominant function of the at-issue tires was on-highway or off-highway – an inquiry that is different from the one now before this Court. Put simply, the *Bridgestone* court determined that the design of the tire dictates the use of the vehicle. *Id.* at *9. However, in this case, the Goodyear G177 model tires attached to the RD888SX are subject to excise tax – a fact that undermines Plaintiff's reading of *Bridgestone*.[8] The *Bridgestone* court did not address the issue now before this Court, and its analysis actually undermines Plaintiff's position to some extent. Thus, the Court does not find its opinion persuasive.

Although not controlling, the Court finds the decision in *Liquid Asphalt Systems, Inc. v. United States*, 555 F. Supp. 1100 (W.D. Mo. 1982), persuasive. In *Liquid Asphalt*, job tankers were used to transport liquid asphalt to roofing job sites. *Id.* at 1103. Once at the job sites, the tankers were then used as construction equipment. *Id.* Despite the fact that the tankers spent much less time on the road than at the job site, the court determined that the tankers' designed transportation function was "vital" to the vehicle's overall use. *Id.* As Defendant points out, it is the "quintessential" function of a dump truck to transport material from the loading site to the dumping site. (Doc. #50-1 at 8). Additionally, as was the case in *Liquid Asphalt*, the RD888SX would be "less valuable" to customers without the ability to travel over public highways. *Liquid Asphalt*, 555 F. Supp. at 1103.

---

[7] Defendant relies, in part, on the same IRS truck survey as it did in *Bridgestone*.

[8] Plaintiff argues that the Goodyear tires in this case are functionally equivalent to the tires at issue in *Bridgestone*.

11

Plaintiff attempts to distinguish this case by pointing out that the job tankers did not have to be licensed to operate on the public highways. *Id.*[9] However, in *Carl Nelson Logging Co. v. United States*, 281 F. Supp. 671 (D.C. Idaho 1967), the court determined that vehicles which violate operating requirements are not tax exempt, undermining Plaintiff's argument that the RD888SX's alleged technical illegalities exempts it from taxation. *Id.* at 674. The *Carl Nelson Logging* court provided:

> If a vehicle meets the classification of a "highway motor vehicle" and is operated on a "highway" within the meaning of the taxing statute here involved, there is no question but that it would be subject to the tax whether or not it met the legal operating requirements as set forth by State and Federal law.

*Id.*[10] While the facts in this case are not identical to those in *Liquid Asphalt*, the similarities support a like result herein.

### 5. Incidental Use of the Public Highways

The parties have very different opinions as to both how much time the at-issue vehicles spend on the public highways and what qualifies as "incidental" use.

Plaintiff argues that any highway usage by the RD888SX is merely incidental to its primary function as an off-highway coal hauler. Relying on the affidavits of purchasers of RD888SX coal haulers, Plaintiff states that "[a]ny highway use was rare and less than 5%

---

[9] However, it should also be noted that the tankers in *Liquid Asphalt* were overweight in many states and could be driven no faster than 40 miles per hour. *Liquid Asphalt*, 555 F. Supp. at 1104-05.

[10] Ultimately, despite this language, the Idaho District Court determined that the trucks before it were "economically, legally, and practically prohibitive for highway use." *Carl Nelson Logging*, 281 F. Supp. at 674.

of the trucks' total operational time." (Doc. #47-1 at 13 n.24).[11]  This position, however, ignores the reality that the RD888SX would not be purchased by the majority of Plaintiff's customers if it was unsuitable for highway use, as the vehicle must be able to transport coal from mine face to tipple, often necessitating use of the public highways.

As Plaintiff brings to the Court's attention, a number of cases have held that vehicles spending a significant amount of time on the public highways satisfy the requirements of the off-highway vehicle exception.  See *Gateway*, 247 F. Supp. 2d at 307 (concluding that a vehicle designed to deliver hot-mix asphalt into a road paving machine, which spent approximately 30-35% of its time traveling on highways, was primarily designed for off-highway use and fell within the off-highway exception); *Halliburton Co. v. United States*, 611 F. Supp. 1118, 1121 (N.D. Tex. 1985) (holding that vehicles that used the highway on a regular basis were primarily designed for off-highway use and satisfied the off-highway vehicle exception).

By contrast, in *Florida Power & Light Co. v. United States*, 56 Fed. Cl. 328 (2003), the court determined that trucks modified by an electric utility to serve as mobile mounts were not "substantially impaired," because, in part, they traveled more than 5,000 miles per year on the public highways.  *Id.* at 333.  In this case, the United States estimates that the at-issue vehicles travel upwards of 20,000 miles per year on the public highways.  While Defendant's statistical methods are not particularly convincing, the Court is satisfied that the RD8888SX travels extensively on the Appalachian coal roads and that such travels are not incidental.

---

[11] In contrast, IRS expert Jerry Pigman estimated the RD888SX's highway use at 75%. (Pigman Dep. 58:24-59:10).

13

Regardless of whether Plaintiff's or Defendant's version of highway usage is accepted, the record does not support Plaintiff's position that the RD888SX's use on public highways is merely incidental. Plaintiff admits the RD888SX was designed to transport coal from mine site to tipple – a purpose often necessitating use of the public roads. Furthermore, the objective design features of the RD888SX, while evidencing an effort to make the vehicle more suitable for use in the Appalachian coal fields, cannot be said to be primarily designed for "transporting a particular type of load other than over the public highway." 26 C.F.R. § 48.4061(a)-1(d)(2)(ii)(A). In fact, if the RD888SX's design did not allow for highway usage or if the vehicle was substantially impaired from travel on the public highways, it would not have been able to achieve its primary purpose – to provide an economically viable method for transporting coal from the extraction point (the mine face) to the tipple or processing area.

### 6. Conclusion

Taken as a whole, the record evidence suggests that the RD888SX is not a special off-highway design. Rather, it is a dual use (on/off-highway) vehicle that may be licensed and that complies with applicable Federal Motor Vehicle Safety Standards. "[T]ransporting a load over the public highways is an important part of the design and use of plaintiff's [vehicles]. Therefore, plaintiff's [vehicles] are not 'specially designed for the primary function of transporting a particular type load other than over the public highways.'" *Liquid Asphalt*, 555 F. Supp. at 1104.

B.     **Substantial Impairment**

Because Plaintiff's challenge to the imposition of the federal excise taxes fails based on its failure to satisfy the "special design" prong, the Court need not address the "substantial impairment" prong of the off-highway vehicle exception. To satisfy the "substantial impairment" prong, the use of a vehicle to transport loads over the public highways must be substantially limited or substantially impaired by reason of its "special design." *See* 26 C.F.R. § 48.4061(a)-1(d)(2)(ii). As no "special design" has been found, it follows that the RD888SX cannot be substantially impaired "by reason of such special design." *Id.*

C.     **Public Policy**

Although certainly not controlling with respect to consideration of the parties' cross motions for summary judgment, public policy considerations also favor upholding the excise taxes in this case. The purpose of the 12% excise tax is to ensure that those entities which enjoy the use of the public roads pay for their upkeep. To put it differently, the tax forces those entities that cause the most damage to the public roads, and often benefit economically the most from them, to pay for the consequences of their use. Based on the evidence in the record, the RD888SX is only marginally distinguishable from other dump trucks. Its slight technical overwidth and generally unsuspicious appearance undermine Plaintiff's emphasis on the fact that the vehicle needs a special permit to travel on public roadways. Most importantly, Plaintiff admits that the vehicle is designed to haul coal from mine site to tipple – a trip that more often than not entails use of the public highways. Moreover, Plaintiff's position that the RD888SX is not subject to excise tax seems

15

disingenuous in light of its policy of imposing excise tax on vehicles sold to customers who refused to sign a statement indicating that they would only be using the vehicle off-highway. At the very least, this policy suggests that Plaintiff fundamentally misunderstood the manner in which applicability of the excise test is determined – *ex ante* rather than *ex post*.

### D. Defendant's Counterclaim

Based upon the preceding analysis and the Court's review of the record, the RD888SX fails the "special design" test as a matter of law. Thus, the IRS correctly assessed excise taxes on the RD888SX, and Plaintiff is liable for taxes owed on RD888SX trucks addressed in Defendant's counterclaim. However, the precise amount of these taxes must still be determined. How the IRS arrived at its figure of $1,149,140 in unpaid taxes is unclear. The record contains little documentation regarding how this figure was reached or, for that matter, how statutory additions should be or have been calculated. Thus, the issue of counterclaim damages will be referred to Magistrate Judge Edward B. Atkins for preparation of a report and recommendation.

### V. Conclusion

The RD888SX is subject to excise tax. It does not qualify for exemption from excise tax based on the off-highway vehicle exception, since the vehicle does not satisfy the exception's "special design" requirement. Rather, based on the RD888SX's purpose of transporting coal from mine site to tipple, the vehicle's ability to travel over the public highways is as important as its off-highway capabilities. Thus, the IRS correctly imposed excise taxes on the RD888SX.

For the reasons stated herein, **IT IS ORDERED THAT –**

(1) Plaintiff's motion for summary judgment (Doc. #47) be, and hereby is, **DENIED** as to both its original complaint and Defendant's counterclaim.

(2) Defendant's motion for summary judgment (Doc. #48) be, and hereby is, **GRANTED** as to both the original complaint and the issue of liability on the counterclaim.

(3) This case be, and hereby is, referred to Magistrate Judge Edward B. Atkins to make a report and recommendation on the issue of damages on the counterclaim.

This 29th day of February, 2008.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\7-04-451-Opinion.wpd